IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT CRENSHAW, | ) | |
| AIS 188466, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-851-ECM-JTA |
| | ) | |
| STATON HEALTHCARE SERVICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants, | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.     Introduction

Plaintiff Robert Crenshaw, who is incarcerated at the Staton Correctional Facility in Elmore Alabama, filed this *pro se* action under 42 U.S.C. § 1983. Crenshaw sues the Staton Healthcare Service and Nurse Darryl Ellis on the allegation that his federally protected rights were violated in connection with Defendants' provision of his medical care. For relief, Crenshaw seeks compensation for pain and suffering. Doc. No. 1.

Ellis filed an Answer and Special Report with an affidavit and medical records addressing Crenshaw's claims. Docs. No. 16, 17. The court directed Crenshaw to file a response supported by affidavits, sworn or verified declarations, or statements made under penalty of perjury. Doc. No. 19 at 1–2. Crenshaw filed responsive materials. *See* Docs. No. 27, 31.

The court previously informed the parties that it may, at any time after the deadline for Crenshaw to file a response and without further notice, treat the special report and any

supporting evidentiary materials as a motion for summary judgment and rule on the motion

in accordance with the law after considering any response. Doc. No. 19 at 3. Pursuant to

that disclosure, the court now treats Ellis's Special Report as a motion for summary

judgment and concludes it is due to be granted.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the movant shows there is no genuine

dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable

trier of fact to find for the nonmoving party …. [A fact] is 'material' if it might affect the

outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland*

*Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of

informing the court of the basis for its motion.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  Once the movant has satisfied that burden, the nonmovant is required to cite

portions of the record showing a genuine dispute of material fact.  *Id*. at 324.  The

nonmovant, however, "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S.

574, 586 (1986).  To establish a genuine dispute of material fact, the nonmovant must

produce evidence such that a reasonable trier of fact could return a verdict in its favor.  *See*

*Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

Summary judgment also should be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Relevant Facts[1]

The following facts are derived from the verified Complaint (Doc. No. 1) and the sworn or verified evidentiary materials presented by Ellis (Docs. No. 17-1—17-3). Although Crenshaw filed responses (Docs. No. 27, 31), they are neither sworn nor verified under 28 U.S.C. § 1746 and thus cannot be considered for purposes of summary judgment.[2]

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[2] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment"); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's]

Crenshaw attached to his response (Doc. No. 27) an affidavit from inmate Joseph Havard (Doc. No. 27-1), but the affidavit is not properly sworn as required for consideration on summary judgment.[3]

On September 18, 2020, Crenshaw began experiencing chest pain and dizziness. Doc. No. 1 at 3. Crenshaw went to Staton's healthcare unit where a "nurse gave him something" and sent him back to his dorm. *Id.* Once back at the dorm, Crenshaw began to feel worse and returned to the healthcare unit. *Id.* "Head nurse Ellis responded by checking [Crenshaw]" and then called an ambulance. *Id.* By the time the ambulance arrived, Crenshaw was vomiting. *Id.* Crenshaw was transported to Montgomery, Alabama, where he was admitted to Jackson Hospital. *Id.*

## IV.   Discussion

### A.   Chronology of Plaintiff's Treatment

---

claim" on summary judgment); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining that unsworn statements, even by pro se parties, should not be "consider[ed] in determining the propriety of summary judgment").

[3] Havard's factual statement is written on a preprinted affidavit form and purportedly sworn under oath before a notary. Doc. No. 27-1 at 1. It does not, however, contain a notary seal. *See Roy,* 53 F.4th at 1347 (explaining that "[a]t the summary judgment stage, parties may submit traditional affidavits sworn under oath before a notary (or another oath-taker) affixed with the notary seal"). And although the preprinted affidavit form includes the language "[t]he foregoing statement is true and correct to the best of my knowledge and abilities," for the statement to be considered on summary judgment, it must meet the statutory requirements of 28 U.S.C. § 1746 requiring declarants, at a minimum to (1) date and sign the document, (2) state that its contents are true, and (3) place himself under penalty of perjury. *Id.* at 1348, 1350. Havard's affidavit is undated, and it does not contain any penalty of perjury language. *See* Doc. No. 27-1. The "penalty of perjury" language is the most critical element of § 1746, and its omission means that Havard's affidavit does not substantially comply with the statute, and therefore, the court does not consider it on summary judgment. *Id.* at 1350 (adopting the reasoning in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir. 1988)). Even if the court considered Havard's affidavit, it does not raise a genuine factual dispute material to Crenshaw's deliberate indifference claim.

4

Ellis is, or was during the relevant time, the Health Services Administrator at Staton and Elmore Correctional Facilities. In response to Crenshaw's Complaint, Ellis submitted an affidavit and copies of Crenshaw's pertinent medical records. Docs. No. 17-1, 17-3. These documents reflect that on September 18, 2020, at 10:45 p.m. a correctional officer escorted Crenshaw to Staton's medical unit for a body chart after he complained of weakness and dizziness. Doc. No. 17-1 at 3; Doc. No. 17-3 at 2. Crenshaw informed medical staff he had been dizzy for 35 to 40 minutes, had ringing in his ears, and had problems walking ("unsteady gait"). Doc. No. 17-1 at 4; Doc. No. 17-3 at 3. Crenshaw's vital signs were taken, including his blood pressure which measured 169/112. Doc. No. 17-3 at 3. The nurse examining Crenshaw documented his complaints of left-hand numbness, ringing in his ear, and unsteady gait and noted he had projectile vomiting. *Id.* Dr. Barrett—the prison physician—was notified of Crenshaw's condition at 11:10 p.m. Doc. No. 17-1 at 4; Doc. No. 17-3 at 3. Crenshaw was given Phenergan (25 mg) at 11:15 p.m. and at 11:25 p.m. he received a dose of Clonidine (0.2 mg).[4] Doc. No. 17-3 at 4. Crenshaw's blood pressure reading at 11:40 p.m. was 168/106 and medical staff noted Crenshaw's comment that he was feeling better. Doc. No. 17-1 at 4; Doc. No. 17-3 at 4. At 12:15 a.m. Crenshaw complained of lightheadedness to medical staff. Doc. No. 17-3 at 4. His blood pressure reading was 158/101. *Id.* Medical staff informed Dr. Barrett of Crenshaw's vital signs at 12:30 a.m. and he directed that Crenshaw be rechecked in an hour and be given .2 mg. of

---

[4] Phenergan, among other uses, is a medication used to prevent and control nausea and vomiting. *Available at* www.medlineplus.gov (last visited November 7, 2023). Clonidine is a medication used to treat high blood pressure. *Id.*

Clonidine. *Id*. Crenshaw's vital signs were checked at 1:30 a.m. at which time his blood pressure measured 136/95. *Id.* After being informed of Crenshaw's latest vital signs, Dr. Barrett advised medical staff to return Crenshaw to population and that he would conduct a follow up of Crenshaw on Monday, September 21, 2020. *Id.* at 4–5. Twenty minutes later, at 1:50 a.m., Crenshaw complained of left side hip pain. *Id.* at 6. On informing Dr. Barrett of Crenshaw's complaint, Dr. Barrett directed medical staff to give him 650 mg. of Tylenol. *Id.* Crenshaw was given the medication and returned to his dorm in a wheelchair and told to submit a sick call request if did not feel better. *Id.*

Crenshaw returned to Staton's health care unit at 4:20 a.m. on September 19, 2020, via stretcher for his complaints of left-sided weakness and numbness in his left arm. Doc. No. 17-1 at 5; Doc. No. 17-3 at 7. Crenshaw's body chart, signed by Ellis, noted that Crenshaw's skin was warm and dry ("W/D") to the touch and that he had been seen earlier in the morning for nausea and vomiting ("N/V"). Doc. No. 17-3 at 7. The nursing progress notes, which contain Ellis's signature, noted Crenshaw's complaints of left-sided weakness, left arm numbness, dizziness since 12:30 a.m., and nausea. Doc. No. 17-3 at 8. Objectively, Ellis noted Crenshaw had a decreased pulse rate, left side numbness, and an abnormal EKG. *Id.* Dr. Barret was notified at 4:25 a.m. of Crenshaw's symptoms and complaints. *Id.* Dr. Barrett then ordered that Crenshaw be sent to the emergency room at Jackson Hospital for evaluation. Doc. No. 17-1 at 5; Doc. No. 17-3 at 8–9.

Medical records from Jackson Hospital reflect, in part, that Crenshaw arrived from Staton following complaints of left-sided numbness starting on or around 6:00 p.m. on September 18, 2020, which was associated with left chest tightness and "2 episodes" of

nausea. Doc. No. 17-3 at 11. In the emergency room, Crenshaw was found to be hemodynamically stable, afebrile, and CTs of his head and abdominal pelvis and a chest x-ray were negative as was other lab work. *Id.* The hospital course records further indicate:

> EKG shows sinus bradycardia as low as 37. [R]eview of the history, he has symptomatic sinus bradycardia back to 2018, at the time he was suggest[ed] to get outpatient stress test and also event monitor - unclear if he got or not. [H]e got radiation therapy and chemotherapy for nasopharyngeal cancer, follow up with Dr. Christon cancer center, last treatment was 7 years ago. [H]e recent[ly] also f[oun]d [he] has some thyroid nodules, had FNA, cytology shows Atypia of undetermined significance (Bethesda category 3). [H]e denies any fever chills, no diarrhea, no abdominal pain, no weight loss, no sick contacts. I was asked to admit patient and treat expectantly. [H]e does feel dizzy occasionally especially as he is standing up, no syncope or collapse. [H]e denies any history of CAD or stress test. [H]e states non-smoker.
>
> Patient admitted hospitalist group for further management, troponin 3 times negative, acute coronary syndrome has been ruled out. Patient was evaluated by cardiologist, recommend stress test, which was done in-hospital[,] negative for ischemia. Patient was monitored in-hospital, bradycardia resolved after admission. Upon admission, patient complain[ed] of left-sided numbness, not much weakness[.] [W]e had a CT head which is negative for acute CVA, will repeat CT head again 2nd day also negative for CVA. However, throughout hospitalization, patient has progressively left-sided weakness[.] [R]epeat CT head the third time also negative. Patient cannot get MRI brain due to "bullet in the body." We consult tele-neurologist - recommended CT audiogram head and neck also CT cervical spine - all negative for acute changes. We do not have a neurologist in-house. I tried transfer the patient to UAB Medical Center - on diversion. Patient refused to leave the hospital because left-sided weakness. I discussed with Dr. Rahming physician from correctional facility[.] [T]his is possible malingering and also he will arrange physical therapy and neurologist follow-up outpatient. Patient stable discharged back to correctional facility. Patient received Holter monitor prior to discharge from Dr. (IKE'S) office.

*Id.*

Crenshaw's discharge diagnosis from Jackson Hospital indicated:

> Discharge diagnosis – stroke-like symptoms, left-sided numbness, sudden-onset. CT head x3 negative.
> Secondary diagnosis - progressive left-sided weakness, ? possible malingering.
> - nausea vomiting.
> - sinus bradycardia / near syncope.
> - thyroid nodules
> - uncontrolled hypertension
> - hypokalemia, hypomagnesemia
> - history of nasopharyngeal carcinoma status post radiation therapy and chemotherapy 7 years ago.

*Id.* at 14.

After Crenshaw's release from Jackson Hospital on September 23, 2020, he returned to Kilby Correctional Facility where he was placed in the infirmary. Doc. No. 17-3 at 55–56. Dr. Wilcotte Rahming completed a discharge summary for Crenshaw on December 4, 2020, indicating, among other items, that Crenshaw had a slow recovery to full ambulation while feigning weakness and that because he was doing well with ADL (activities of daily living), he would be discharged from the infirmary. *Id.* at 56.

### B.    Plaintiff's Deliberate Indifference Claim

### 1.    Standard of Review

Ellis denies Crenshaw's claims of deliberate indifference.[5] Doc. No. 16. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate

---

[5] Defendant Ellis filed an Answer (Doc. No. 16) asserting, among other things, sovereign and qualified immunity. He did not rely on these defenses in the Special Report, and, furthermore, his briefing indicates he worked for Wexford Health Sources, Inc., the prison healthcare contractor, at the time of the challenged conduct. *See* Doc. No. 17 at 2. As an employee of the contract healthcare provider, Ellis's qualified immunity argument is foreclosed by *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *amended*, 205 F.3d 1264 (11th Cir. 2000). In *Hinson*, the Eleventh Circuit relied upon the reasoning of *Richardson v. McKnight*, 521 U.S. 399 (1997), where the Supreme Court declined to extend qualified immunity to privately employed prison guards, to hold that qualified immunity may not be extended to privately employed prison medical staff.

indifference to serious medical needs of prisoners violates the Eighth Amendment. "To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Roy v. Ivy*, 53 F.4th 1338, 1346–47 (11th Cir. 2022) (citation omitted).

A claim for deliberate indifference has both an objective and a subjective component. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). The objective component requires Crenshaw to show the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation and internal quotation marks omitted).

The subjective component has three subparts and requires Crenshaw to show a defendant had subjective knowledge of the risk of harm, consciously disregarded that risk, and acted with more than gross negligence. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).[6] "Delay in access to medical attention can violate the Eighth Amendment

---

Based on *Hinson*, Ellis cannot claim the protection of qualified immunity. In addition, for similar reasons that the *Hinson* and *Richardson* courts declined to extend the doctrine of qualified immunity, Ellis is not entitled to sovereign immunity as it is reserved for the state and its employees.

[6] The undersigned notes that in a recent Eleventh Circuit decision, the Court observed that "[o]ur cases say both that the standard is 'more than mere negligence' and that it is 'more than gross negligence.'" *Johnson v. Lewis*, 83 F.4th 1319 n.2 (11th Cir. 2023) (comparing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) with *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

. . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citations and internal quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

However, medical treatment need not be "perfect, the best obtainable, or even very good," and "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't. of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation and internal quotation marks omitted). Only medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" violates the Eighth Amendment. *Id.* (citation and internal quotation marks omitted). An inmate who received care but disagrees with the course of treatment provided or desired another type of treatment cannot, without more, show deliberate indifference. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Thus, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266 (citation and internal quotation marks omitted) (alteration in original). Deliberate indifference requires that a defendant intentionally failed to provide medical care. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

### 2.      Defendant Ellis

Crenshaw challenges the adequacy of treatment he received for his complaints of chest pain and dizziness on September 18, 2020. Broadly construing Crenshaw's allegations, he purportedly claims that Ellis acted with deliberate indifference by ignoring or failing to respond promptly to Crenshaw's requests for medical assistance after he experienced chest pain and dizziness. Defendant Ellis maintains that Crenshaw received appropriate medical care and that the medical care was not delayed or denied. Doc. No. 17-1. Assuming Crenshaw's condition presents a serious medical need, he presents no evidence sufficient to create a genuine dispute of material fact regarding the claim that Ellis acted with deliberate indifference to his medical needs.

Although Crenshaw alleges that on his initial visit to Staton's infirmary on September 18, 2020, he was given "something" in response to his complaints of chest pain and dizziness and returned to his dormitory, review of his medical records reflect medical staff did more than he alleges. On Crenshaw's arrival at the Staton health care unit, nursing staff conducted a body chart and examination in response to Crenshaw's complaint of feeling weak and dizzy. Crenshaw remained in the infirmary for about three hours during which time his vital signs were taken several times and relayed to Dr. Barrett by phone. Because Crenshaw complained of hip pain about 2 hours after his arrival at the infirmary, Dr. Barrett advised nursing staff to provide him with Tylenol. Shortly before Crenshaw complained of hip pain, medical staff informed Dr. Barrett of Crenshaw's most recent vital signs at which time the doctor informed nursing staff that Crenshaw could be returned to his dorm. Crenshaw was returned to his housing unit around 2:00 a.m. Approximately two

and half hours later, at 4:20 a.m., Crenshaw returned to the infirmary complaining of weakness on his left side, numbness to his left arm, and feeling nauseated. Ellis conducted a body chart and examination of Crenshaw in response to his complaints and called the doctor for further orders. Dr. Barrett directed medical staff to send Crenshaw to the emergency room at Jackson Hospital where he was admitted at around 7:00 a.m. on September 19, 2020.  *See* Docs. No. 17-1, 17-3.

Crenshaw complains of not receiving appropriate or adequate treatment. However, nothing in the record evidence shows the course of treatment provided by Ellis "presented a substantial risk of serious harm … but [he] persisted in the course of treatment anyway." *Campbell v. Sikes*, 169 F.3d 1353, 1370 (11th Cir. 1999). Crenshaw has also not presented evidence that Ellis or other attending medical staff were subjectively aware of any serious medical condition regarding his symptoms when he presented to the infirmary but consciously disregarded the risk of harm. Deliberate indifference requires that a defendant knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994); *see also Estelle*, 429 U.S. at 105 (explaining that imperfect medical treatment, "although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain"). The evidence shows during Crenshaw's first visit to the infirmary, medical staff examined him and tracked his condition and vital signs for several hours. About an hour before being released to his dorm, Crenshaw told medical staff he was feeling better. When Crenshaw returned to the infirmary, Ellis examined him and promptly called the prison doctor who told Ellis to call an ambulance to arrange Crenshaw's transport for outside emergency

medical care. Ellis complied with that directive.

Under the circumstances of this case, the Court finds Crenshaw has identified no specific facts nor provided evidence that could create a triable jury issue on whether the conduct of Ellis was deliberately indifferent to his medical needs. Crenshaw received care and treatment in response to his condition and symptoms. No evidence has been presented that Ellis exhibited deliberate indifference towards Crenshaw's medical needs by intentionally or deliberately delaying or withholding necessary medical treatment or by interfering with his ability to access such treatment. Further, no evidence has been presented that the course of treatment undertaken by Ellis was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (citation and internal quotation marks omitted).

To the extent Crenshaw's allegations reflect his disagreement with the medical treatment provided, "[i]t is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate." *Abel v. Lappin*, 661 F. Supp. 2d 1361, 1373 (S.D. Ga. 2009) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation"). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (internal quotations

and citation omitted). And the facts must show more than medical malpractice, misdiagnosis, accidents, or a poor exercise of medical judgment. *See Estelle*, 429 U.S. at 104–07; *see also Farmer*, 511 U.S. at 835–36 (finding a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation).

> As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." [*Farmer*, 511 U.S.] at 834, 114 S. Ct. 1970 (quotation omitted). Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." *Id*. at 839–40, 114 S. Ct. 1970. Indeed, even where "prison [or medical] officials ... actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"—and, importantly for present purposes, "even if the harm ultimately was not averted." *Id*. at 844, 114 S. Ct. 1970.

*Swain v. Junior*, 961 F.3d 1276, 1285–86 (11th Cir. 2020).

Here, Crenshaw has failed to submit sufficient evidence to establish the elements of his deliberate indifference claim relating to Ellis's treatment of his challenged condition. Consequently, Crenshaw has failed to establish that Ellis violated his Eighth Amendment rights. Ellis's motion for summary judgment is therefore due to be granted.

### C.    Staton Healthcare Service

Crenshaw lists "Staton Healthcare Service" as a defendant. This designation is not a legal entity nor a person within the meaning of § 1983, and, therefore, it is not subject to suit or liability in an action proceeding under 42 U.S.C. § 1983. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65

(1989). In the event "Staton Healthcare Service" is considered an extension of the State of Alabama through one of the correctional facilities within the Department of Corrections, as such it is entitled to absolute immunity from suit because the State has not waived its immunity nor consented to this suit. *Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (holding that "the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or departments]" unless "the state has [unequivocally] waived its immunity or where Congress has abrogated that immunity"); *Papasan v. Allain*, 478 U.S. 265 (1986) (holding that unless the State consents to suit or Congress has abrogated the State's immunity, which has not occurred, a plaintiff cannot proceed against it as the action is proscribed by the Eleventh Amendment and "[t]his bar exists whether the relief sought is legal or equitable"); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit."); *Stevens v. Gay*, 864 F.2d 113, 115 & n.5 (11th Cir. 1989) (noting the Eleventh Amendment bars a 42 U.S.C. § 1983 action against a State and its agencies regardless of the relief sought). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

Because the "Staton Healthcare Service" is not a legal entity subject to suit it is due to be dismissed under 28 U.S.C. § 1915A(b)(1).

## V.    Supplemental Jurisdiction

Although it does not appear that Crenshaw alleged any state-law claims with his federal claims under § 1983, construing the Complaint liberally, it implicates the state torts of negligence and medical malpractice. These claims are subject to dismissal because review is only appropriate upon exercise of the Court's supplemental jurisdiction. *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (quotation marks and citations omitted) (holding that "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (finding the exercise of supplemental jurisdiction is discretionary). In the posture of this case, the exercise of supplemental jurisdiction is inappropriate based on the Court's dismissal of the claims over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (allowing district courts to decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction").

## VI.   Conclusion

For these reasons, the Magistrate Judge RECOMMENDS that:

1.    Defendant Ellis's Special Report (Doc. No. 17) be CONSTRUED as a motion for summary judgment and the motion be GRANTED in favor of Defendant Ellis.

2.    This case against Defendant "Staton Healthcare Service" be DISMISSED with prejudice under 28 U.S.C. § 1915A(b)(1).

3.      Plaintiff's federal claim against Defendant Ellis be DISMISSED with prejudice.

4.      The Court DECLINE to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(c)(3) and DISMISS said claims without prejudice.

5.      This case be DISMISSED with prejudice.

Further, it is **ORDERED** that any objections to this Recommendation must be filed by **November 28, 2023**.  An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered. This Recommendation if not a final order and, therefore, it not appealable.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by *see Resol. Tr. Corp., v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11TH Cir. R. 3–1.

DONE this 13th day of November, 2023.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE